DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**E QUALCOM, CORP.**,
Appellant,

v.

**GLOBAL COMMERCE CENTER ASSOCIATION, INC.**, a Florida not-for-profit corporation,
Appellee.

No. 4D14-4108

[November 18, 2015]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; John J. Murphy, III, Judge; L.T. Case No. 08-1242 CACE 21.

Michael R. Bass of Michael R. Bass, P.A., Fort Lauderdale, for appellant.

Michael R. D'Lugo and Michael A. Holtmann of Wicker, Smith, O'Hara, McCoy & Ford, P.A., Orlando, for appellee.

SHEPHERD, CAROLINE, Associate Judge.

E Qualcom Corp. ("Qualcom") and its commercial landlord, Global Commerce Center Association, Inc. ("Global"), were engaged in settlement negotiations when negotiations stalled. Thereafter, Global filed with the trial court a motion to enforce settlement. The trial court granted the motion, finding that "the parties reached an agreement on the essential elements of their settlement as evidenced by the chain of emails between the parties and memorialized in the settlement stipulation entered into evidence." Qualcom appealed. We reverse because there was not competent, substantial evidence of an agreement between the parties as to all the essential terms of a settlement.

*Relevant Procedural History*

Global is the owner of a commercial park located in Weston, Florida, in which Qualcom is a unit owner. Global is authorized to impose assessments against unit owners in the business park for improvements, maintenance, and payments related to the common areas.

On January 10, 2008, Global filed a two-count complaint against Qualcom. Count I was a lien foreclosure action for non-payment of maintenance assessments; count II was a claim for money damages for the unpaid assessments. Qualcom contested the allegations and filed a two-count counterclaim for negligence and breach of contract. On September 3, 2009, the trial court granted Global's motion for partial summary judgment of foreclosure and entered final summary judgment against Qualcom on its counterclaim. Qualcom appealed and this Court reversed, holding that Global failed to prove the absence of genuine issues of material fact relating to Qualcom's allegations of damages from Global's failure to provide proper maintenance. *E. Qualcom Corp. v. Global Commerce Ctr. Ass'n*, 59 So. 3d 347 (Fla. 4th DCA 2011).

On March 14, 2012, the trial court granted Qualcom's motion for partial summary judgment as to the lien foreclosure count. A jury trial was set for September 24, 2013, on Global's claim for damages from unpaid assessments and Qualcom's counterclaims for negligence and breach of contract. A hearing on the pending motions in limine was scheduled for September 23. The weekend before trial saw a flurry of negotiations in the form of emails between the lawyers for Qualcom (Samuel B. "Clay" Reiner II ("Reiner")) and Global (Leonard Wilder ("Wilder")). Settlement appeared imminent; however, several key issues required resolution before the parties could finalize the agreement.

*Email Settlement Negotiations*

Beginning September 21, 2013, at 5:59 p.m., an email from Wilder to Reiner suggested there was an agreement to resolve the case: "Clay, I think we have a potential settlement per $ terms discussed with you and Michael."

According to Global, these settlement terms included: (1) Qualcom would pay $26,250 over twelve months; (2) an insurance company would pay Qualcom $15,000 to be transferred immediately to Global; (3) a mutual release subject to enforcement of settlement; (4) Global will give five days notice to cure any default by Qualcom and, if not cured, Global gets a judgment for the current amount owed (approx. $70,000) plus accrued assessments, less payments made; and (5) assignment of any rent upon default to Global.

Reiner responded by email on September 22: "I think all is well – just getting confirmation for (sic) the you-know-who . . . ." Later the same day, Wilder asked: "Clay, it's been six hours. Do we have a settlement or not? Please advise." Reiner responded later that afternoon: "Yes we are settled,

2

but first payment in October – he can't do sooner – . . . .  The rent payments can't be assigned – they already are to lender.  But don't worry . . . ."

The remainder of the emails discussed cancelling the hearing and trial, forwarding the proposed settlement agreement, and requests from Wilder to Reiner to confirm that the case was indeed settled and that the parties could finalize the documents.  Reiner responded that he would have his assistant cancel the trial.  Several days later, after promptings from Wilder, Reiner stated that he was in mediation and that he had an associate working with the client on some revisions.  Significantly, there was no "smoking gun" email hammering out definitive settlement terms, and Reiner never responded with any revisions to the settlement agreement.

On October 15, 2013, frustrated with Reiner's silence and the length of time exhausted to cement the agreement, Global filed its Motion to Enforce Settlement.

*Hearings on Global's Motion to Enforce Settlement*

On March 7, 2014, the trial court began the hearing on Global's Motion to Enforce Settlement.  Global introduced fifteen emails in support of its contention that a binding settlement was reached.

On August 29, 2014, at a subsequent hearing on the motion, Reiner and Luis Navia, Qualcom's principal, testified about five sticking points in the negotiations that had not been resolved.  First, Qualcom opposed making twelve payments instead of fourteen; the shortened payment schedule required it to pay $312.50 more per month.  Second, Qualcom opposed the assignment of rents—a factor mentioned in one of Reiner's September 22 emails.  Third, Qualcom disagreed on the amount it should pay if it defaulted under the settlement agreement.  Fourth, Qualcom disputed its responsibility for roof assessments—part of the lien foreclosure count for which it had secured a summary judgment.  Fifth, Qualcom opposed the application of the $30,000 Global was holding pending the outcome of the case.  In addition, during his testimony, Reiner waffled repeatedly about the scope of his authority to settle the case.

*Discussion*

"The party seeking to enforce a settlement agreement bears the burden of showing the opposing party assented to the terms of the agreement." *Spiegel v. H. Allen Holmes, Inc.*, 834 So. 2d 295, 297 (Fla. 4th DCA 2002) (citing *Carroll v. Carroll*, 532 So. 2d 1109 (Fla. 4th DCA 1988)).  Here, Global bears the burden of showing that the terms are sufficiently specific and that there was mutual agreement as to every essential element.  *Don*

*L. Tullis & Assocs., Inc. v. Benge*, 473 So. 2d 1384, 1386 (Fla. 1st DCA 1985).

The emails in this case demonstrate the lawyers' failure to finalize the terms of the settlement before cancelling the trial. Although such a cancellation, without an actual settlement agreement, might have been the proper subject for sanctions, it does not supply the missing material terms of a settlement. Both attorneys desired a settlement, but their desire never bore fruit. In fact, one of Reiner's September 22 emails clearly refers to a problem with rent assignment, a material term of the settlement that Global wanted to enforce. Reiner's admonition in that email, "don't worry," is nothing more than an expression of optimism that a settlement could be reached, not an acknowledgement that it had been accomplished.

The record in this case fails to demonstrate the existence of an enforceable settlement agreement. Moreover, the record fails to conclusively demonstrate whether, in fact, Reiner had the authority to settle the case. *See Ponce v. U-Haul Co. of Fla.*, 979 So. 2d 380, 383 (Fla. 4th DCA 2008) (reversing where record demonstrated that while attorney had authority to negotiate settlement terms, "U-Haul failed to meet its burden to prove that [the attorney] had a clear and unequivocal grant of authority . . . to file a proposal for settlement").

Accordingly, we reverse the trial court's order enforcing the settlement agreement and remand for further proceedings. We affirm as to all remaining issues.

GROSS and TAYLOR, JJ., concur.

\*　　　\*　　　\*

***Not final until disposition of timely filed motion for rehearing.***